United States District Court
Southern District of Texas

**ENTERED**

December 11, 2020

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RODEO TIME PROMOTIONS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-20-1740 |
| | § | |
| LAWRENCEBURG MUNICIPAL UTILITIES, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Rodeo Time Promotions, LLC, a Texas company, sued Lawrenceburg Municipal Utilities ("LMU"), a municipal electric utility company owned by the City of Lawrenceburg, Indiana. Rodeo Time alleges that LMU failed to pay for social-media services that Rodeo Time provided. Rodeo Time sued LMU in state court in Brazos County, Texas. LMU removed to this court and then moved to dismiss for lack of personal jurisdiction.

LMU's contract with Rodeo Time contains a clear consent to jurisdiction in Brazos County, Texas. The motion turns on whether LMU's contract with Rodeo Time is void. LMU argues that the LMU superintendent, who signed the contract with Rodeo Time on LMU's behalf, did not have the authority to do so. If the superintendent had the authority, LMU consented to jurisdiction in Texas. If he did not, LMU did not consent to jurisdiction.

Based on the motion, response, and reply; the current record; and the applicable law, the court finds that the contract between LMU and Rodeo Time is not void and that LMU consented to jurisdiction in Texas. LMU's motion to dismiss for lack of personal jurisdiction, (Docket Entry No. 6), is denied. LMU may reassert its arguments on contract validity later in the case, on a fuller record. The reasons for this ruling are explained below.

## I.     Background

Rodeo Time is a Texas limited liability company located in Young County, Texas, and "provides social media marketing campaigns and strategies, as well as high-quality digital content, to market and promote the products and services of both individuals and entities." (Docket Entry No. 1-2 at ¶¶ 3, 7).  LMU is a municipal electric utility company owned and operated by the City of Lawrenceburg, Indiana.  (*Id.* at ¶ 4).

In September 2019, Rodeo Time and an LMU representative entered a Master Social Media Services Agreement and Statement of Work.  (Docket Entry Nos. 6-1, 6-2).  Olin Clawson, the then president of LMU, signed the Statement of Work, and his name appears on the Master Agreement.[1]  (*Id.*).  In the Master Agreement, Rodeo Time agreed to "provide the social media services . . . described in individual Statements of Work, as amended, regarding each project requested by [LMU]." (Docket Entry No. 6-2 at 1).  LMU agreed to pay Rodeo Time for "all Service Fees set forth in each Statement of Work."  (*Id.*).  The Master Agreement also stated that "each party consents to the personal jurisdiction" of the "federal and state courts residing in Brazos County, Texas."  (*Id.* at 5).

Under the Statement of Work, Rodeo Time would "provide and deliver" to LMU "comprehensive social media management services" to promote LMU's new fiber optic and data services.  (Docket Entry No. 6-1 at 1–3; Docket Entry No. 1-2 at ¶ 7).  LMU agreed to pay Rodeo Time an hourly rate specified in the Statement of Work, as well as an "advanced deposit of $10,000.00."  (Docket Entry No. 6-1 at 1–2).  The Statement of Work was "entered into pursuant to the terms of the" Master Agreement.  (*Id.* at 1).

---

[1] LMU does not argue that the Master Agreement is void because Clawson did not sign it.  (Docket Entry No. 10 at 2 ("Whether Olin Clawson signed or agreed to the contract is not the issue.")).

In December 2020, Clawson submitted a budget for LMU to the Lawrenceburg Utility Service Board.  The budget contained a request of "$150,000.00 for Fiber Optics Ad Work." (Docket Entry No. 1-2 at ¶ 9).  The LMU Board approved the budget.  (*Id.*).  After the Board approved the LMU budget, "Rodeo Time sent LMU an invoice for the work performed pursuant to the" Statement of Work for $115,000.00.  (*Id.* at ¶ 10).  Rodeo Time alleges that LMU has not paid "any amount" of the $115,000.00.  (*Id.*).

In March 2020, Rodeo Time sued LMU in Texas state court.  (*Id.* at 1).  LMU removed and moved to dismiss for lack of personal jurisdiction.  (Docket Entry Nos. 1, 6).  LMU argues that Clawson did not have authority under Indiana law to enter into the Master Agreement on LMU's behalf.  (*Id.* at 5–8).  Rodeo Time responded, and LMU replied.  (Docket Entry Nos. 9, 10).

## II.  The Legal Standards

Federal Rule of Civil Procedure 12(b)(2) governs dismissal for lack of personal jurisdiction.  The plaintiff bears the burden of establishing jurisdiction by prima facie evidence. *Frank v. PNK (Lake Charles) LLC*, 947 F.3d 331, 336 (5th Cir. 2020).  "To determine whether the plaintiff has met this burden, the court can consider the assertions in the plaintiff's complaint, as well as the contents of the record at the time of the motion." *Id.* (quotation omitted).  The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts."  *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)).  The court is not obligated to credit conclusory allegations, even if uncontroverted.  *Panda Brandywine Corp. v. Potomac Elec. Power Co*., 253 F.3d 865, 868 (5th Cir. 2001).

3

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *Frank*, 947 F.3d at 336. The Texas long-arm statute confers jurisdiction to the limits of due process. *Id.* Due process permits the exercise of personal jurisdiction over a nonresident defendant when that defendant has "minimum contacts" with the forum state and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson*, 20 F.3d at 647).

"Specific jurisdiction applies when a non-resident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (quoting *Panda Brandywine Corp.*, 253 F.3d at 868). "The non-resident's purposeful availment must be such that the defendant should reasonably anticipate being haled into court in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (quotation omitted).

A court may exercise personal jurisdiction over a nonresident defendant based on a forum-selection clause unless the defendant can "sufficiently prove that the enforcement of the choice of forum provision would be unreasonable due to fraud or overreaching." *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995).

## III.    Analysis

Whether Clawson had the authority to bind LMU to the Master Agreement with Rodeo Time turns on Indiana law. While the Master Agreement specifies that Texas law governs disputes

4

between the parties, a choice-of-law provision does not control the "preliminary question of contract formation." *Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 531 n.10 (5th Cir. 2020); *see also Edminster, Hinshaw, Russ and Assoc., Inc. v. Downe Twp.*, 953 F.3d 348, 351 (5th Cir. 2020) ("[T]he choice-of-law provision has force only if the parties validly formed a contract."); *OJSC Ukrnafta v. Carpatsky Petroleum Corp.*, 957 F.3d 487, 498 (5th Cir. 2020) ("[D]ispute resolution clauses in a contract do not have force unless the parties had the capacity to contract in the first place."). When the power of a municipality to enter a contract is questioned, the Fifth Circuit applies the state law from the state where the municipality is located. *See Edminster*, 953 F.3d at 351 (relying on New Jersey law to determine whether a New Jersey municipality entered into a valid contract, even though the contract had a Texas choice-of-law provision).

LMU argues that two Indiana statues cast doubt on Clawson's authority to enter into the Master Agreement. The first prohibits municipal actors from obligating a municipality to spend funds without an appropriation. The second distributes authority between municipal utilities boards and utility superintendents.

### A.    The Appropriation Issue

Indiana Code § 36-4-8-12(b) provides:

[A] city department, officer, or employee may not obligate the city to any extent beyond the amount of money appropriated for that department, officer, or employee. An obligation made in violation of this section is void.

Rodeo Time argues that § 12(b) simply requires LMU to stay within its yearly budget. (Docket Entry No. 9 at 7). LMU argues that § 12(b) requires Lawrenceburg to appropriate money to LMU for each specific project requiring an outlay of funds, including the contract with Rodeo Time. (Docket Entry No. 6 at 6–8). The court has not found, and the parties have not cited, cases

directly addressing these competing readings of § 12(b).  The language of § 12(b) and the limited case law interpreting it support Rodeo Time's arguments.

Section 12(b) places an upper limit on the amount of money that city actors may spend. That limit is set by reference to the amount appropriated "*for that department, officer, or employee,*" not the amount appropriated for a specific project or expenditure.  Section 12(b) prohibits a city actor from obligating the city to spend more than the "amount of money" the city actor was appropriated.  It does not clearly require an appropriation for each specific expenditure. Section 12(b) commands city actors to stay within their budget, and it warns parties dealing with city actors that their contracts are void if those contracts cause the city actor to exceed its budget. *See City of Lawrenceburg v. Franklin Cty.*, 131 N.E.3d 758, 765 (Ind. Ct. App. 2019) (section 12(b) prohibits city actors from obligating the city to spend funds in perpetuity because "the City's budget" might be "dramatically altered" in the future).  LMU's reading of § 12(b) requires the court to construct a limit, not apparent on the face of the statute, that is below this upper budgetary limit.  The court declines to do so.[2]

The record, while limited, contains evidence that the Master Agreement and Statement of Work did not push LMU over its 2019 budget.  Rodeo Time submitted the Master Agreement and Statement of Work to Clawson, then the LMU president, who agreed to both on the same day. Rodeo Time also submitted a link to a recorded meeting of the Lawrenceburg Utility Service Board.  (Docket Entry No. 1-2 at ¶ 9 n.3).  During the meeting, the Board approved Clawson's

---

[2] The two cases LMU cites address a prior version of § 12(b), which required municipalities to appropriate funds for particular "purposes."  Acts of 1905, ch. 129, § 85, at 219.  Courts read this to require an appropriation for each expenditure of city funds.  *See Miller v. City of Evansville*, 189 N.E.2d 823, 825 (1963) ("[T]he board of trustees of said city's waterworks department is not in any position to contract for the construction of equipment for the fluoridation of the public drinking water."); *Hamer v. City of Huntington*, 21 N.E.2d 407, 410 (1939) ("This contract would have constituted a valid and binding contract between the city and the company if, at that time, there had been [funds] appropriated for the purchase of said equipment.").  That language is no longer part of § 12(b).

budget request of $150,000 "for Fiber Optics Ad Work." (*Id.*).  LMU submitted an affidavit from Richard Richardson, a clerk treasurer for the City of Lawrenceburg, confirming that this budget included "unspecified marketing services."  (Docket Entry No. 6-3 at ¶ 3).  Publicly available documents include the 2019 "Fiber Budget" for LMU, which totaled nearly $350,000.00.  *See* Lawrenceburg Municipal Utilities, 2020 LMU Budget, at 4, https://drive.google.com/file/d/1KOcz-KpR_iVvrrcCbLmLGnAwp-KyzCQk/view.

The record further suggests that LMU was aware that Rodeo Time was performing under the Statement of Work by "deliver[ing] Campaign Content" before submitting its first invoice. (Docket Entry No. 1-2 at ¶ 10); *see also DeHaan v. DeHaan*, 572 N.E.2d 1315, 1323 (Ind. Ct. App. 1991) ("To interpret ambiguous or uncertain language, both the circumstances surrounding the execution of a contract . . . and the parties' conduct in connection with the contract may be considered.").  At this stage, when the court must resolve factual conflicts in favor of Rodeo Time, these facts are sufficient to show that the Master Agreement and Statement of Work did not cause LMU to exceed its yearly budget.

Even if the Statement of Work did cause LMU to exceed its yearly budget, it is unclear that the Master Agreement did.  The Master Agreement obligated LMU to expend funds for fees "set forth in each Statement of Work."  (Docket Entry No. 6-2 at 1).  The Master Agreement did not obligate LMU to spend a certain amount within the budget period.  Instead, the Agreement contemplated future Statements of Work that would then obligate LMU to spend funds.  LMU has not given the court reason to doubt Clawson's ability to enter contracts that did not require LMU to spend municipal funds above the 2019 budget limit.

7

**B.     The Authority Issue**

LMU also argues that Clawson did not have the authority to enter into "any contract" on behalf of LMU.  (Docket Entry No. 10 at 3).  Instead, LMU argues, the Lawrenceburg Utility Service Board alone has the power to award contracts for LMU.  LMU relies on Indiana Code § 8-1.5-3-4(10)(A)–(C), which provides:

> The board shall . . . award contracts for:
> (A) the purchase of capital equipment;
> (B) the construction of capital improvements; or
> (C) other property or purposes that are necessary for the full and efficient construction, management, and operation of each utility

Section 8-1.5-3-4(a) also vests "responsibility for the detailed supervision of each utility . . . in its superintendent, who is responsible to the board for the business and technical operation of the utility."  No case has addressed the division of authority between a utilities board and the superintendent of the utility.  The language of § 8-1.5-3-4 supports Rodeo Time's argument.

Section 8-1.5-3-4 requires a utilities board to award contracts for large purchases, such as "capital equipment" and "construction of capital improvements."  LMU does not argue that a social-media management contract falls into either of these categories.  Instead, LMU argues that social-media management is "necessary for the full and efficient . . . management . . . of each utility."  (Docket Entry No. 10 at 3).  But LMU presents no authority for this assertion.  There is no basis to conclude that a professionally managed social media account is "necessary" for the "full and efficient" operation or management of a utility.  At best, the choice of a person or entity to manage a utility's social-media presence more likely falls under the "business" operation of a utility, which is vested solely in the utility's superintendent.  And even if social-media management is necessary to operate or manage a utility, Rodeo Time submitted evidence that the

Lawrenceburg Utility Service Board approved Clawson's budget request for marketing services. (Docket Entry No. 1-2 at ¶ 9 n.3).

Based on the limited record before the court, Clawson had authority to enter into the Master Agreement on behalf of LMU. Because the Master Agreement contained a clear consent to jurisdiction in Texas, this court may exercise personal jurisdiction over LMU. *See Alliantgroup, LP v. Feingold*, No. 09-CV-0479, 2009 WL 1109093, at *7 (S.D. Tex. Apr. 24, 2009) ("A mandatory forum-selection clause demonstrates a party's consent to jurisdiction in a specific forum, and courts, absent a showing of fraud or overreaching in creating the clause, enforce such consent."); *Am. Airlines, Inc. v. Rogerson ATS*, 952 F. Supp. 377, 381 (N.D. Tex. 1996) ("[The out-of-state defendant] consented to jurisdiction in Texas, and the Court finds that this consent alone is sufficient to satisfy the fundamental fairness of the personal jurisdiction analysis.").

LMU's motion to dismiss for lack of personal jurisdiction is denied. These conclusions are based on the current record. The parties may raise these arguments at a later stage, if warranted, on the fuller factual record that may then be available.

## IV.    Conclusion

LMU's motion to dismiss for lack of personal jurisdiction, (Docket Entry No. 6), is denied.

SIGNED on December 11, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

9